[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10663

_____

TROY SMITH,
individually and on behalf of all others similarly situated,
BRENDAN C. HANEY,
individually and on behalf of all others similarly situated,
GERALD E. REED, IV,
individually and on behalf of all others similarly situated,

Plaintiffs-Appellees,

COSTA DEL MAR, INC.,
a Florida corporation,

Defendant-Appellee,

*versus*

MITCHELL GEORGE MIORELLI,
AUSTIN VALLS,

2                    Opinion of the Court                    22-10663

JOHN W. DAVIS,

                                        Interested Parties-Appellants.

———————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:18-cv-01011-TJC-LLL

———————————————

Before BRANCH, LUCK, and TJOFLAT, Circuit Judges.

BRANCH, Circuit Judge:

This is an appeal from a district court order approving a class-action settlement that resolved three different lawsuits against Costa Del Mar, Inc. ("Costa") for its allegedly deceptive warranty and repair policies on its sunglasses. The district court determined that the settlement provides over $32 million in monetary relief—over $27 million in product vouchers and $5 million in injunctive relief—to four classes of consumers of Costa's sunglasses.

For obvious reasons, Costa and the named plaintiffs do not argue that the district court erred in approving the settlement. Instead, three unnamed class members—Mitchell Miorelli, John Davis, and Austin Valls (hereinafter, "Objectors")—appeal the district court's approval order. In essence, Objectors argue that the

district court erred in approving the settlement because it incorrectly determined that the settlement was not a coupon settlement, thereby failing to apply the heightened standard of scrutiny as required under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712(e).

We do not reach the merits of the CAFA argument, however, because, as Objectors argue on appeal, the named plaintiffs lacked Article III standing to pursue their claims for injunctive relief. As a result, the district court necessarily abused its discretion in approving the settlement because the court's holistic review of the settlement's fairness included relief that it had no jurisdiction to award. Accordingly, we **VACATE** the district court's order and **REMAND** for proceedings consistent with this opinion.

## I.     Background

Costa is a sunglasses manufacturer that represented to buyers that their sunglasses were backed by lifetime warranties. According to the named plaintiffs, these lifetime warranties required Costa to repair their sunglasses either free-of-charge or for a nominal fee. Each of the named plaintiffs purchased Costa sunglasses and, after the sunglasses became damaged, sent them to Costa for repair. Instead of repairing the sunglasses free-of-charge or for a nominal fee, however, Costa charged the named plaintiffs up to $105.18 to repair their sunglasses. Accordingly, the named plaintiffs initiated three separate class action lawsuits against Costa asserting various claims.

Troy Smith initiated a class-action lawsuit in the U.S. District Court for the Middle District of Florida (hereinafter the "*Smith* lawsuit"), bringing a one-count Magnuson-Moss Warranty Act ("MMWA") claim against Costa.[1]  Smith's complaint alleged that he and unnamed class members suffered past injuries in the form of an $11.95 payment to have their sunglasses repaired when Costa's warranty allegedly required repairs "without charge." Smith did not allege that he was likely to suffer any future injury. Despite not alleging any threat of future injury, however, Smith requested both monetary damages as well as injunctive relief in the form of "[a]n [o]rder enjoining Costa from violating the MMWA."

Gerald Reed also initiated a class-action lawsuit in the Middle District of Florida (hereinafter the "*Reed* lawsuit"), bringing a Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim.  Reed alleged that when he sent his sunglasses to Costa for repair, Costa charged him "$100.95 in repair and shipping costs, which was far more than the 'nominal fee' promised by Costa." Accordingly, Reed alleged that he and other class members were

---

[1] The MMWA vests federal district courts with subject matter jurisdiction to hear claims brought under the Act.  15 U.S.C. § 2310(d)(1)(B).  However, Congress imposed limits on this jurisdictional grant, including limitations on the maintenance of class actions.  *Id*. § 2310(d)(3).  Specifically, a class action brought under the MMWA is not cognizable in federal court if "the number of named plaintiffs is less than one hundred."  *Id*. § 2310(d)(3)(C).  Smith, however, was the lone named plaintiff in his class action lawsuit and could not rely on the federal question jurisdiction provided by the MMWA.  His initial complaint invoked the federal court's diversity jurisdiction under 28 U.S.C. § 1332(d)(2).

injured by Costa because they "[d]id not receive the benefit of the repair warranty made by Costa" and "[p]aid more than a 'nominal' fee for repairs." Like Smith, Reed did not allege that he was likely to suffer any future injury. However, Reed also requested not only monetary damages but injunctive relief.

Nicholas Howland initiated a class-action lawsuit in the Circuit Court, Fourth Judicial Circuit in and for Duval County, Florida, bringing both a FDUTPA and a MMWA claim against Costa. Brendan Haney later replaced Howland as the named plaintiff in that lawsuit (hereinafter the *"Haney* lawsuit"). Haney alleged that Costa charged him "a total of $105.18 in repair and shipping costs" despite its warranty that it would repair glasses for a "nominal fee." Like the named plaintiffs in the other two lawsuits, Haney did not allege that he faced any threat of future injury by Costa's warranty practices, only past harm. However, in addition to requesting actual damages, Haney requested—just like the plaintiffs in the other two lawsuits—injunctive relief.

On February 25, 2020, after extensive litigation in all three lawsuits, Smith moved to file an Amended Complaint to facilitate a settlement agreement that would resolve the claims in all three cases by providing payment in the form of product vouchers as well as injunctive relief requiring Costa to change its label and warranty practices. The district court granted the motion, and Smith filed an Amended Complaint, consolidating all of the claims from the *Smith, Haney,* and *Reed* lawsuits. The Amended Complaint in *Smith* continued to reference only past, not future,

injuries.[2]  It made no allegations that any of the named plaintiffs faced the prospect of future injury by needing to have their sunglasses repaired again.  Despite the lack of allegations regarding the threat of future harm, the named plaintiffs again requested the court to grant injunctive relief in the form of an order "enjoining [Costa] from falsely promising to repair or replace its sunglasses . . . for a nominal fee" as well as "enjoining [Costa] from violating the MMWA."

On May 1, 2020, the named plaintiffs filed an unopposed motion for preliminary approval of the class settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.  They argued that the proposed settlement would result in "over $60 million of value to the [c]lass" in the form of product vouchers and attorneys' fees, as well as non-monetary injunctive relief requiring Costa to change "certain consumer-facing marketing materials and product packaging" to remove language regarding the strength of Costa's warranties. Additionally, the plaintiffs emphasized that product vouchers that were not redeemed would result in a *cy pres* payment of up to $1,000,000 to an unnamed charity.

---

[2] With respect to Smith, the Amended Complaint alleged that "Smith and the members of the class have paid $11.95 plus tax per warranty claim to Costa, when the MMWA required that Costa honor its warranty 'without charge'" and "Costa failed to comply with its obligations under the MMWA, and each of the members of the class were harmed by Costa's failures."  As to Reed and Haney, the Amended Complaint alleged "[a]s an immediate, direct, and proximate result of Costa's false warranty, Costa injured Plaintiffs Reed and Haney, and the class members."

22-10663                Opinion of the Court                7

The district court granted preliminary approval of the settlement, noting "it [was] satisfied that the settlement [was] not a coupon settlement." It instructed the parties to disseminate the class notice and set a final fairness hearing. After the class notice was disseminated, Objectors filed individual objections arguing that the settlement was a coupon settlement and subject to heightened scrutiny as required by CAFA, 28 U.S.C. § 1712.[3] They argued that pursuant to 28 U.S.C. § 1712(a) any award of attorneys' fees to class counsel must be based on the value of product vouchers that are actually redeemed, not the value of vouchers that would be distributed. Thus, they asserted that the district court should have determined the value of the vouchers likely to actually be redeemed and awarded class counsel attorneys' fees based on that figure.

The district court considered the objections but ultimately overruled them. Relying on the Ninth Circuit's decision in *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. 2015),

---

[3] Pursuant to 28 U.S.C. § 1712, "[i]n a proposed settlement under which class members would be awarded coupons, the court may approve the proposed settlement only after a hearing to determine whether, and making a written finding, that the settlement is fair, reasonable, and adequate for class members." 28 U.S.C. § 1712(e). Additionally, "the court may, in its discretion upon the motion of a party, receive expert testimony from a witness qualified to provide information on the actual value to the class members of the coupons that are redeemed." 28 U.S.C. § 1712(d). Objectors argue that this statute required the district court to determine the actual value of product vouchers that would be redeemed before approving the settlement as fair, reasonable, and adequate.

the district court concluded that the settlement was not a coupon settlement and thus based the settlement's value on the face value of the product vouchers to be distributed along with the settlement's injunctive relief. Accordingly, it determined that the face value of these vouchers totaled $27.2 million and that the value of the settlement's injunctive relief was worth $5 million, making the settlement's value approximately $32 million. The district court then awarded class counsel 25% of the settlement's value, which amounted to $8 million.[4]

At bottom, the district court approved the settlement, including the injunctive relief, determining that the settlement was fair, reasonable, and adequate. Objectors timely appealed the district court's approval of the settlement, arguing that the district court erred in (1) determining that the settlement agreement was not a coupon settlement; (2) calculating the attorneys' fees owed to class counsel, including by awarding attorneys' fees based on the face value of the vouchers as opposed to the number of vouchers redeemed; (3) approving the potential *cy pres* payment; (4) failing to adequately consider what Objectors alleged was evidence of a collusive settlement;[5] (5) awarding Objectors a relatively low

---

[4] Because this $8 million figure was $4 million less than class counsel requested, and per the terms of the settlement this difference was to benefit the class, the district court requested additional briefing on how the $4 million should be distributed to the class. The district court ultimately decided that this $4 million would be distributed to the class in the form of cash payments.

[5] Objectors argued that a "clear-sailing" provision proves that the settlement agreement was the result of collusion. This provision called for the settlement

amount because it determined that Objectors provided little value to the class; and (6) considering the value of the injunctive relief in the Settlement because the named plaintiffs lacked Article III standing to pursue injunctive relief. Because we agree that named plaintiffs lacked Article III standing for injunctive relief, we need not reach Objectors' other arguments.

## II.      Standard of Review

"Questions of the litigants' standing may be raised at any time, and are reviewed *de novo*." *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1251 (11th Cir. 2023). We review a district court's decision to approve a class-action settlement for abuse of discretion. *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1251 n.2 (11th Cir. 2020). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Williams*, 65 F.4th at 1251 (quotation omitted). "An error of law is an abuse of discretion *per se*." *Id.* (quotation omitted).

## III.      Discussion

Objectors argue that the district court erred in assigning a $5 million value to the injunctive relief in the settlement because none

---

agreement to become null and void in the event that the district court determined that the settlement was a coupon settlement. Objectors argued that the only reason that the parties included this provision was to benefit class counsel who would otherwise receive less money if the settlement were deemed a coupon settlement.

of the named plaintiffs had Article III standing to pursue injunctive relief.[6]   Article III limits federal courts to deciding "Cases" and "Controversies." U.S. Const. art. III, § 2.  "The doctrine of standing is one of several doctrines that reflect this fundamental limitation." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).   "The requisite elements of Article III standing are well-established[.]" *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 296 (2022).  A plaintiff "must show (1) that he suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury is traceable to—that is, was likely caused by—the defendant's legal violation, and (3) that the injury would likely be redressed by judicial relief." *Walters v. Fast AC, LLC*, 60 F.4th 642, 647 (11th Cir. 2023) (quotations omitted).  A plaintiff must demonstrate he has standing to sue "throughout all stages of litigation." *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019) (quotation omitted).  Additionally, "a plaintiff must demonstrate standing separately for each form of relief sought." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021) (quotation omitted).  "Thus, even if a plaintiff can establish standing to pursue separate claims for monetary relief based on allegations of *past* harm, before a court may grant that

---

[6] The main argument that Objectors raised was that the district court abused its discretion in approving the settlement because it incorrectly determined that the settlement was not a coupon settlement.  Because the named plaintiffs lacked Article III standing to pursue injunctive relief, and because of the MMWA jurisdiction issue we raise in footnote 8, we do not address the merits of whether the damages portion of the settlement was a coupon settlement subject to CAFA requirements.

plaintiff injunctive relief, the plaintiff must separately establish a threat of 'real and immediate,' as opposed to 'conjectural or hypothetical,' future injury." *Williams*, 65 F.4th at 1253 (emphasis in original) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983)). [7]

Here, none of named plaintiffs alleged any threat of future injury, let alone a threat that was real and immediate. For example, the Amended Complaint does not allege that any of the named plaintiffs have sunglasses that are broken and need to be repaired such that that the named plaintiffs are at an imminent risk of being harmed by Costa's alleged misrepresentations. Rather, the Amended Complaint alleged past harm only. Accordingly, neither Smith, Haney, nor Reed had Article III standing to pursue injunctive relief when the district court approved the settlement.

As our recent decision in *Williams* makes clear, a district court abuses its discretion in approving a class action settlement when the named plaintiffs lack Article III standing to pursue injunctive relief, yet the district court considers the injunctive relief when determining whether the settlement is fair, reasonable, and adequate. *Williams*, 65 F.4th at 1253–57. "This is because . . . the decision whether to approve a class-action settlement is a holistic one; the various parts of a settlement must be considered in concert

---

[7] In *Williams*, we noted that "[t]he movant's burden of proof" to establish standing "at the class-certification stage is unclear" and assumed, for purposes of that appeal, "that the applicable standard [was] a pleading standard." *Williams*, 65 F.4th at 1254. We do the same here, because "[t]he [n]amed [p]laintiffs fail to satisfy even that low burden." *Id.*

to determine whether the Settlement *as a whole* provides relief to the [c]lass that is 'fair, reasonable, and adequate.'" *Id.* at 1256–57 (italics in original) (quoting Fed. R. Civ. P. 23(e)(2)). Thus, when a district court "lack[s] the power to grant [the requested] injunctive relief, its [approval of a settlement] [is] based on a legal error, and must be set aside as an abuse of discretion." *Id.* at 1257.

Because the district court lacked the power to grant the injunctive relief in the parties' settlement agreement, it abused its discretion by considering the injunctive relief's value in its determination that the settlement was fair, reasonable, and adequate. We thus **VACATE** the district court's order and **REMAND** for proceedings consistent with this opinion.

**VACATED AND REMANDED.**[8]

---

[8] The parties have raised other jurisdictional issues that the district court should consider in the first instance. For example, on remand, the district court should consider whether it had subject matter jurisdiction over the *Smith* lawsuit—the lawsuit into which the others were consolidated. The *Smith* lawsuit brought a MMWA claim only. Some of our sister circuits have held that when the jurisdictional requirements of the MMWA are not met, CAFA does not provide an alternative basis for a federal court to exercise subject matter jurisdiction over a case brought under the MMWA. *See Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177 (3d Cir. 2023); *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027 (9th Cir. 2020). If after consideration of the jurisdictional issues, the district court determines it has subject matter jurisdiction, it "should account only for relief that the Named Plaintiffs have standing to pursue and that it has jurisdiction to grant when assessing the overall fairness of any settlement (assuming, of course, that the parties reach a new settlement agreement and submit it for the district court's approval)." *Williams*, 65 F.4th at 1258.